**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOCATION INCORPORATED, <br><br> *Plaintiff,* <br><br> -against- <br><br> GABRIEL KILONGO and JUPITER CONTEMPORARY INC., <br><br> *Defendants.* | No. 26-cv-1334 (JPC) <br><br> **COMPLAINT** |

Plaintiff Location Incorporated ("Plaintiff"), for its Complaint against Defendants

Gabriel Kilongo ("Kilongo") and Jupiter Contemporary Inc. ("Jupiter") (together,

"Defendants"), alleges and avers as follows:

## NATURE OF ACTION

1.      This is an action for negligence, breach of fiduciary duty, breach of

contract, and breach of duties as bailees arising out of the destruction of a sculpture (the

"Work") created by the Plaintiff, whose principal and sole shareholder is an artist

("Artist").

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff is a New York corporation, with its principal place of business at

38 East 1st Street, New York, NY 10003.

3.      Upon information and belief, Jupiter is a Florida corporation with a

principal place of business in 1217 71st Street, Miami Beach, Florida 33141.

4.      Upon information and belief, a satellite gallery that Jupiter or an affiliate had in New York is, due to an eviction and non-payment, no longer operating or present in New York.

5.      Upon information and belief, Defendant Kilongo is Jupiter's sole principal and shareholder, and is a Florida resident, whose actual place of business is located at Jupiter's offices, 1217 71st Street, Miami Beach, FL 33141.

6.      This Court has personal jurisdiction over both Defendants pursuant to N.Y. C.P.L.R. 302(a) because the Defendants transact business in New York, including the conduct addressed in this action, and because the claims in this action arise from that activity.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity between the Plaintiff on one hand and the Defendants on the other, and because the amount in controversy exceeds $75,000.

8.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

9.      In or about 2024, the Artist, operating through Plaintiff, agreed with Defendants to consign the Work to Defendants for the sole purpose of displaying it for possible sale at the "Untitled Art" Fair (the "Fair"), to be held in Miami Beach in December 2024.

10.      At the time (before any damage to the Work), the value of the Work was $1,600,000.

11.      Prior to the start of the Fair, Defendants informed Plaintiff that they thought they could generate interest from one or more museums in buying the Work.

12.      For a variety of reasons, artists frequently agree to sell artworks to museums at a significant discount from the retail price.

13.      Accordingly, Plaintiff agreed that the Work could be sold to an established museum (but no one else) at a discounted price.

14.      The Fair concluded with no viable offers from museums or anyone else to purchase the Work.

15.      The parties agreed that the Work would be shipped by a qualified art shipper and handler in a dedicated truck to the Fair and, if it failed to sell, would also be returned to the Artist in New York via a dedicated truck and qualified art shipper and handler.

16.     The parties agreed that the Defendants would assume all risk of physical loss and damage to the Work while in the custody and control of Defendants, including their employees and agents.

17.     Defendants agreed to provide insurance coverage for Plaintiff's benefit under their insurance policy.

18.     At Defendants' expense, the Work was shipped without incident to Florida via a dedicated truck operated by reputable art shipping/handling company that obtained shipping suggestions from Plaintiff.

19.     The Work did not sell at the Fair and Defendants tried to arrange for the same art shipper to pick up the Work at the Fair and return it to Plaintiff in New York on the closing day of the Fair.

20.     Because Defendants did not (a) give the art shipper sufficient notice of the pick-up and shipment, (b) did not pay a deposit, and (c) did not prepare the Work for pick-up as required by the art shipper, the art shipper, after traveling to the Fair, declined to pick up and deliver the Work to the Artist.

21.     Upon information and belief, Defendants thereafter communicated with one or more other art handlers and shippers who removed the Work from the Fair.

22.     Plaintiff asked Defendants to return the Work to New York many times, but Defendants did not do so.

4

23.    To the contrary, Defendants told Plaintiff that a reputable art storage company had agreed to hold the Work until suitable arrangements could be made to return the Work to New York as agreed.

24.    In March 2025, Defendants disclosed to Plaintiff that the Work had been damaged.

25.    Although Plaintiff has no direct knowledge of the chain of events, upon information and belief, the Work was damaged at one or more times when in transit with Defendants' shipping agents and/or at the storage facility(ies) of one or more of Defendants' agents.

26.    On April 24, 2025, the Work was returned to Plaintiff in pieces and in a condition that was deemed a total loss by both the Artist and a professional adjuster engaged by Plaintiff's insurer.

27.    Defendants were underinsured and only had One Million Dollars in insurance coverage for loss or damage to the Work.

28.    As a result of the damage it suffered, the Work was a total loss, worthless, and without value, when received by Plaintiff.

29.    Defendants' insurer offered only $879,000 to cover the total loss of the Work.

30.     While the offer was for far less than the value of the Work, Plaintiff agreed to accept the offer to avoid the delay and cost of contesting the claim or making claims against Defendants and, possibly, Defendants' insurer.

31.     Although Defendants declined to provide Plaintiff with a copy of the applicable insurance policy that Defendants claim entitles them to an insurance payment, in the interest of expediting the payment, at Defendants' request, Plaintiff confirmed that it would not object to Defendants' insurer paying $79,000 to Defendants.

32.     Defendants entered into a binding agreement with Plaintiff to accept the respective sums offered by Defendants' insurer in exchange for good and valid consideration.

33.     After months of delaying the closing and payment of the agreed sums, Defendants have now breached and repudiated the agreement to accept payment of the sums agreed.

## FIRST CLAIM FOR RELIEF
### (Negligence)

34.     Plaintiff repeats and realleges the allegations in Paragraphs 1-33 as if set forth in full here.

35.     The damage to the Work was the direct and proximate result of the recklessness, carelessness and/or negligent acts and/or omissions of Defendants in failing to properly and adequately perform, supervise, inspect, and/or complete the

proper packing and/or packaging, shipping, and transportation of the Property from the Fair to the Plaintiff.

36.     Plaintiff has been damaged as a direct result of Defendants' negligence in an amount to be determined at trial, but not less than $1,600,000.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract-Value of the Work)

37.     Plaintiff repeats and realleges the allegations in Paragraphs 1-36 as if set forth in full here.

38.     As part of the consignment of the Work, Defendants and Plaintiff agreed that Defendants would procure insurance for, and be financially responsible for, the full value of the Work: $1,600,000.

39.     The Work is a total loss and worthless as a result of the physical damage it suffered before Plaintiff's receipt of the return shipment.

40.     Defendants breached the agreement by failing to effect payment of any portion of the amount they owe Plaintiff.

41.     Plaintiff has been damaged as a direct result of Defendants' breach in an amount to be determined at trial, but not less than $1,600,000.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract-Division of Insurance Proceeds)

42.     Plaintiff repeats and realleges the allegations in Paragraphs 1-41 as if set forth in full here.

7

43. Defendants' insurer offered a total of $879,000 for the claim concerning the Work.

44. Plaintiff and Defendants agreed that Plaintiff would be entitled to $800,000 of that sum and that Defendants would be entitled to $79,000.

45. Defendants breached that agreement by repudiating his agreement to accept insurance proceeds of $79,000 and authorize payment of $800,000 to Plaintiff.

46. Plaintiff has been damaged as a direct result of Defendants' breach in an amount to be determined at trial, but not less than $800,000.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

47. Plaintiff repeats and realleges the allegations in Paragraphs 1-46 as if set forth in full here.

48. As Plaintiff's consignee and agent, Defendants owed Plaintiff a fiduciary duty to act in Plaintiff's best interests.

49. Defendants breached that duty by, among other things, (i) acting negligently with respect to their handling of the Work, (ii) underinsuring the risk of loss and value of physical damage to the Work, and (iii) failing to act in accordance with their duty as his agent, including but not limited to, withholding and misrepresenting information about the original shipper and the timing and cause of the damage to the Work.

8

50.     Plaintiff has been damaged as a direct result of Defendants' conduct in an amount to be determined at trial, but not less than $1,600,000.

51.     Plaintiff is entitled to punitive or exemplary damages in an amount to be determined at trial as a result of Defendants' breach of their fiduciary duty to Plaintiff.

## FIFTH CLAIM FOR RELIEF
### (Bailment)

52.     Plaintiff repeats and realleges the allegations in Paragraphs 1-51 as if set forth in full here.

53.     The acceptance and retention of the Work by Defendants constituted a bailment.

54.     As bailees, Defendants were legally obligated to return the Work to Plaintiff on demand in the same condition in which they received the Work.

55.     Defendants breached their duty by returning the Work to Plaintiff with grievous physical damage.

56.     Plaintiff has been damaged as a direct result of Defendants' conduct in an amount to be determined at trial, but not less than $1,600,000.

9

**WHEREFORE,** Plaintiff respectfully prays for relief against Defendants as follows:

A. On its First, Second, Fourth, and Fifth Claims, compensatory damages in an amount to be determined at trial, but not less than $1,600,000;

B. On its Third Claim, compensatory damages in an amount to be determined at trial, but not less than $800,000;

C. Exemplary and/or punitive damages in an amount to be determined at trial;

D. The costs of this action, including reasonable attorneys' fees; and

E. Such other and further relief as this Court deems just and proper.

Dated: 2026-February-17

**ARTxLAW PLLC**

By: *s/ Ronald W. Adelman*

John R. Cahill
Ronald W. Adelman
8 North Front Street
Kingston, NY 12401
212-719-4400

*Attorneys for Plaintiff*
*Location Incorporated*

**JURY DEMAND**

Plaintiff demands a jury trial of all issues triable before a jury.